FILED
October 03, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: lad
DEPUTY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

**Kimberly Wiseman,**

Petitioner,

**v.**

**Jim Smith, Patricia Miller, Will Jones, Ben Perry, The McLennan County Commissioners; Jared Goldsmith Cera, The McLennan County Elections Administrator; and The McLennan County Judge Scott Felton,**

Respondents.

No. 6:22 CV-00945-ADA-DTG

# Petitioner's Response to Respondents' Motion to Dismiss, Joint Answer, and Response to Request for Injunctive Relief

*TO THE HONORABLE JUDGE Derek T. Gilliland,*

COMES NOW Pro se Petitioner, Kimberly Wiseman, and has filed an opposition to the removal and motion for remand in the above cause. Respondents, JIM SMITH, PATRICIA MILLER, WILL JONES, BEN PERRY, THE MCLENNAN COUNTY COMMISSIONERS, JARED GOLDSMITH CERA, THE MCLENNAN COUNTY ELECTIONS ADMINISTRATOR, AND THE MCLENNAN COUNTY JUDGE SCOTT FELTON, filed a joint answer and response to injunction in state court on September 8, 2022, and removed the above cause on September 13, 2022: subsequently filing a Motion to Dismiss under Federal Rules for Civil Procedure Rule

12(c) (ECF. no. 4) based on the Original Petition on September 14, 2022. Petitioner respectfully incorporates responses to Respondents' motion, answer, and response with the following brief in support.

## Certificate of Service

I, Kimberly Wiseman, certify that I have served a true and correct copy of this response at the time of filing via USPSmail to attorney for Respondents as follows:

MICHAEL W. DIXON
State Bar No. 05912100
Email: mdixon@haleyolson.com
HERBERT S. BRISTOW
State Bar No. 03020500
Email: hbristow@haleyolson.com

Attorney for Respondents

By: /s/ *Kimberly Wiseman*
Kimberly Wiseman
419 Barron Ln
Axtell, TX 76624
kimwiseman522@gmail.com
*Pro se*

# Table of Contents

**TABLE OF AUTHORITIES** ........ 4
**INTRODUCTION** ........ 11
**STANDARD FOR REVIEW** ........ 12
***Judicial Notice*** ........ 13
**ARGUMENTS AND AUTHORITIES** ........ 14
**A. FACT-BASED MERITS** ........ 14
**B. STANDING** ........ 17
***Generalized Grievance*** ........ 18
***Speculative Pleading*** ........ 20
***Sovereign/Governmental Immunity*** ........ 20
***The Doctrine of Laches*** ........ 21
***The Doctrine of Unclean Hands*** ........ 21
***General Denial*** ........ 22
**E. REMEDIABLE RIGHTS** ........ 23
***Federal Question*** ........ 24
***Voting Rights*** ........ 24
***Constitutional Claims*** ........ 25
**1. *Petitioner Alleges Facts for First Amendment Violation*** ........ 25
**2. *Petitioner Alleges Facts for Fourteenth Amendment Violation*** ........ 27
**3. *Petitioner Alleges Facts for Fifteenth Amendment Violation*** ........ 28
***4. Declaratory Relief*** ........ 29
***5. Injunctive Relief*** ........ 30
i. Timing ........ 30
ii. Status Quo ........ 31
iii. Right to Relief Sought ........ 32
iv.Irreparable and Imminent Harm ........ 32
v. Balance of Hardships and Public Interest ........ 33
**REMOVAL** ........ 34
**PRAYER** ........ 35
**APPENDIX** ........ 36

# TABLE OF AUTHORITIES

**Cases**

Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty., 796 F.3d 636, 649 (6th Cir. 2015) ..... 33

Andrade v. Naacp of Austin, 345 S.W.3d 1, 7-8 (Tex. 2011) ..... 19

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ..... 12

Assoc. Indus. of New York v. Ickes, 134 F.2d 694, 704 (2d Cir. 1943) ..... 33

Baker v. Carr, 369 U.S. 186, 206, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) ..... 18

Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979) ..... 24

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ..... 12

Blackston v. Alabama, 30 F.3d 117, 120 (11th Cir.1994) ..... 12

Bonas v. Town of North Smithfield, 265 F.3d 69, 74 (1st Cir. 2001) ..... 24

Bonbrest v. Kotz, 65 F. Supp. 138 (D.C.D.C., 1946) ..... 31

Burdick v. Takushi, 504 U.S. 428, 433-34 (1992) ..... 18, 23

Cf. Grimes v. Navigant Consulting, Inc., 185 F.Supp.2d 906, 913 (N.D.Ill.2002) ..... 13

Cinevision Corp. v. City of Burbank, 745 F.2d 560, 575 (9th Cir. 1984) ..... 26

City of Dallas v. Abbott, 304 S.W.3d 380, 384 (Tex. 2010) ..... 30

City of Monroe Employees Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 655 n. 1 (6th Cir.2005) ..... 13

Clinton v. City of New York, 524 U.S. 417, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) ..... 17

College Sav. Bank, 527 U.S. at 675-76, 119 S.Ct. at 2226 ..... 20

Consumer Crusade v. Fairon Associates, 379 F. Supp. 2d 1132, 1137-38 (D. Colo. 2005) ..... 34

Conway v. Pacific University,324 Or. 231, 240 (1996) ..... 26

Corum v. Univ. Of N.C., 413 S.E.2d 276 (N.C. 1992) ..... 21

Cuellar v. Maldonado, No. 13-14-00491-CV, at *7 (Tex. App. Mar. 5, 2015) ..... 23

Curling v. Raffensperger, 493 F. Supp. 3d 1264, 1280 (N.D. Ga. 2020) ..... 14

Currier v. Doran, 242 F.3d 905 (10th Cir. N.M. 2001) ..... 27

D.C. Court of Appeals v. Feldman, 460 U.S. 462, 477 (1983) ..... 30

Daily v. Parker, 152 F.2d 174, 162 A.L.R. 819, C.A.7, 1945 ..... 31

Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.,274 F.3d 377, 400 (6th Cir.2001) ..... 33

Delta County Levee Improvement Dist. No. 2 v. Leonard, 516 S.W.2d 911, 913 (Tex. 1974), cert. denied, 423 U.S. 829 (1975) ..... 21

Deshaney v. Winnebago Cty. Soc. Servs. Dept, 489 U.S. 189 (1989) ..... 26

Dickinson, 331 U.S. at 748, 67 S.Ct. at 1384 (1947). .......... 23
Dish Network v. Bauder, Case No: 6:14-cv-1443-Orl-31DAB, at *15 (M.D. Fla. Mar. 12, 2015) .......... 33
Dobbs v. Jackson Women's Health Organization, No. 19-1392 (June 24, 2022) .......... 32
Doe v. Gladstone Sch. Dist., Civil No.: 3:10-cv-01172-JE, at *22 (D. Or. June 6, 2012).......... 26
EEC v. Akins, 524 U.S. 11, 24, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) .......... 19
Elrod v. Burns, 427 U.S. 347, 373 (1976) .......... 32
Embury v. King, 361 F.3d 562, 564-65 (9th Cir. 2004) .......... 20
Fajen v. Foundation Reserve Ins. Co., Inc., 683 F.2d 331, 333 (10th Cir. 1982) .......... 34
Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) .......... 13
Fusaro v. Cogan, 930 F.3d 241 (4th Cir. 2019) .......... 28
Gant v. Grand Prairie Ford, No. 02-06-386-CV, at *1 (Tex. App. July 19, 2007) .......... 22
Gomillion v. Lightfoot, 364 U.S. 339, 347-48 (1960) .......... 24
Goode v. City of Philadelphia, 539 F.3d 311, 322 (3d Cir. 2008) .......... 17
Graham v. Connor, 490 U.S. 386, 393-94 (1989) .......... 24
Griffin v. Burns, 570 F.2d 1065 (1st Cir. 1978) .......... 28
Grimes v. Navigant Consulting, Inc., 185 F.Supp.2d 906, 913 (N.D.Ill.2002) .......... 13
Haddad v. Fromson, 154 F. Supp. 2d 1085, 1091 (W.D. Mich. 2001) .......... 20
Hawthorne v. Mac Adjustment, 140 F.3d 1367, 1370 (11th Cir.1998) .......... 12
Hearts Bluff Game Ranch, Inc. v. State, 381 S.W.3d 468, 472 (Tex. 2012) .......... 30
Heine v. New York Life Insurance Co., 50 F.2d 382, C.A.9, 1931 .......... 31
Hernandez, 872 F.3d (9th Cir. 2017) .......... 32
Hill v. Sibley Memorial Hospital, 108 F. Supp. 739, 740 (D.C.D.C., 1952) .......... 31
Hunnings v. Texaco, Inc . 29 F.3d 1480, 1483 (11th Cir.1994) .......... 12
In re D.D.L., No. 13-22-00062-CV, at *5 (Tex. App. Aug. 25, 2022) .......... 17
In re S.M.D., 329 S.W.3d. (Tex. App. 2010) .......... 17
In re State, No. 20-0394, at *10 n.33 (Tex. May 27, 2020). .......... 23
In re Team Rocket, L.P., 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding) .......... 30
Jacobs, 290 U.S. at 16, 54 S.Ct. at 27 (1933) .......... 23
James C. Harrington, Free Speech, Press, and Assembly Liberties Under the Texas Bill of Rights, 68 TEX.L.REV. 1435, 1490 (1990) .......... 23
Johnson v. City of Seattle, 474 F.3d 634, 639 (9th Cir. 2007) .......... 27

Joint Anti-Fascist Committee v. McGrath, 341 U.S. 123, 163, 72 S.Ct. 624, 643, 95 L.Ed. 817 (1951) ........ 28
Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 (9th Cir.2006) ........ 27
Kershaw v. Julien, 72 F.2d 528, 530 (10th Cir. 1934) ........ 31
Kusper v. Pontikes, 414 U.S. 51, 55 (1973) ........ 23
L.W. v. Grubbs, 974 F.2d 119, 121 (9th Cir.1992) ........ 26
Lackey v. State, 638 S.W.2d 439, 467 (Tex. Crim. App. 1982) ........ 30
Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir.), cert. denied, 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995) ........ 34
Life Ins. Co. of North Am. v. Reichardt, 591 F.2d 499, 505 (9th Cir. 1979) ........ 29
Low v. King, 867 S.W.2d 141, 144-45 (Tex. App. 1993) ........ 23
Mantos v. City, No. 02-09-00315-CV, at *1 (Tex. App. Feb. 10, 2011) ........ 21
Marco's Franchising, LLC v. Marco's Italian Exp., Inc., 239 F.R.D. 686, 687 (M.D. Fla. 2007) 12
Massachusetts v. Environmental Protection Agency, 549 U.S. 497, 498 (2007). ........ 17
McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc) ........ 18
Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) ........ 32
Menominee Indian Tribe of Wis. v. Drug Enforcement Admin., 190 F. Supp. 3d 843 (E.D. Wis. 2016) ........ 29
Morrow v. Yannantuono, 152 Misc. 134, 273 N.Y.S. 912 ........ 31
N.L.R.B. v. Slagle Mfg. Co., 658 F.2d 785, 786 (10th Cir. 1981) ........ 26
NLRB v. Carroll Contracting Ready-Mix, Inc.,636 F.2d 111, 113 (5th Cir. 1981) ........ 25
NLRB v. Claxton Manufacturing Co.,613 F.2d 1364, 1371 (5th Cir. 1980) ........ 25
Obama for Am. v. Husted,697 F.3d 423, 436 (6th Cir.2012) ........ 33
O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir. 2007) ........ 13
Palko v. Connecticut, 302 U.S. 319, 325, 326, 58 S. Ct. 149, 152, 82 L. Ed. 288 (1937) ........ 18
Penilla v. City of Huntington Park, 115 F.3d 707 (9th Cir. 1997) ........ 27
PenneCom B.V. v. Merrill Lynch & Co., 372 F.3d 488, 493 (2d Cir. 2004) ........ 21
Peters v. UBS AG, 13 Civ. 3098 (PAC), at *8 (S.D.N.Y. Jan. 15, 2014) ........ 21
Philip J. Pfeiffer W. Wendell Hall, Employment and Labor Law, 43 SW.L.J. 81, 84 (1989) ........ 23
Pittman v. State, CV 05-509-BR, at *6 (D. Or. Aug. 8, 2005) ........ 20
Pritchett v. Office Depot, Inc., 404 F.3d 1232, 1235 (10th Cir. 2005) ........ 34
Rice v. Cayetano, 528 U.S. 495, 512 (2000) ........ 28
Rivera v. City of Laredo, 948 S.W.2d 787, 793 (Tex. App.-San Antonio 1997, pet. denied) ........ 21

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ..... 14

San Diego Gas Electric Co. v. City of San Diego, 450 U.S. 621, 654-55, 101 S.Ct. 1287, 1305-06, 67 L.Ed.2d 551 (1981) ..... 23

Schaffer v. Clinton, 240 F.3d 878, 885 n. 8 (10th Cir.2001) ..... 13

Schilling v. Rogers , 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) ..... 29

Shamrock Oil Gas Corp. v. Sheets, 313 U.S. 100, 108-109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) ..... 34

Shelby County v. Holder, 570 U.S. 529, 566 (2013) ..... 23

Snyder v. Phelps , 580 F.3d 206, 214 n.4 (4th Cir. 2009) ..... 27

State v. Johnson, 821 S.W.2d 609 (Tex. Crim. App. 1991) ..... 32

State v. Neill, No. 03-12-00571-CV, at *3 (Tex. App. Apr. 10, 2014) ..... 21

State v. Terrazas, 962 S.W.2d 38, 40 n.2 (Tex. Crim. App. 1998) ..... 32

Stromberg v. California , 283 U.S. 359, 368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) ..... 27

Stuart v. Camnitz , 774 F.3d 238, 244 (4th Cir. 2014). ..... 28

Tellabs, Inc. v. Makor Issues Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ..... 13

Texas v. Penguin Grp. (Usa) Inc. (In re Elec. Books Antitrust Litig.), 14 F. Supp. 3d 525, 529-30 (S.D.N.Y. 2014). ..... 17

Theobold v. Pate, 542 S.W.2d 460, 464 (Tex. Civ. App. 1976) ..... 22

Thomas v. Groebl, 147 Tex. 70, 212 S.W.2d 625, 630 (1948) ..... 23

Thompson v. Willis, 881 S.W.2d 221, 225 (Tex. App. 1994) ..... 23

Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 589 (2d Cir. 1988) ..... 29

Trs. of Purdue Univ. v. Vintage Brand, LLC, 541 F. Supp. 3d 868 (N.D. Ind. 2021) ..... 20

Unida v. Volpe, 337 F. Supp. 221, 225 (N.D. Cal. 1971). ..... 30

Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998) ..... 22

United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001) ..... 34

United States v. Pennzoil Company, 252 F. Supp. 962, 970-71 (W.D. Pa. 1965) ..... 31

United States v. Reading Co., 226 U.S. 324, 357 ..... 24

United States v. Reese, 92 U.S. 214, 218 (1876) ..... 28

United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 686-88, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) ..... 19

Veasey v. Perry, No. 13-CV-00193, 2014 WL 5090258, at *41 (S.D.Tex. Oct. 9, 2014), stayed by 769 F.3d 890 (5th Cir. (Tex.) Oct. 14, 2014) ..... 23

Weeks v. United States, 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652, 656 (1914) ..... 32

Weiss v. Mayflower Doughnut Corp., 1 N.Y.2d 310, 316 (1956) ..... 21
Western Union Telegraph Co. v. Foster, 247 U.S. 105, 114 ..... 24
Yick Wo v. Hopkins, 118 U.S. 356, 370 (1886) ..... 23
Youngevity Int'l, Corp. v. Smith, 224 F. Supp. 3d 1022, 1028 (S.D. Cal. 2016) ..... 33

**Statutes**

18 U.S.C. § 245 ..... 24
28 U.S.C. § 2201 ..... 29
42 U.S.C. § 1983 ..... 24
42 U.S.C. §15371(b) ..... 15
52 U.S.C. 20971 ..... 16
HAVA ..... 14
TEX. ADMIN. CODE § 81.60 ..... 14, 16, 17
TEX. ADMIN. CODE § 81.61 ..... 14, 16
TEX. CIV. PRAC. & REM. CODE § 37.003 ..... 25
TEX. CIV. PRAC. & REM. CODE § 37.004 (a)(b) ..... 25
TEX. CIV. PRAC. & REM. CODE § 65.011 ..... 25
TEX. ELEC. CODE Title 8 ..... 11, 14
TEX. ELEC. CODE § 1.014 ..... 16
TEX. ELEC. CODE § 52.062 ..... 16, 17
TEX. ELEC. CODE § 122.001 ..... 14, 20
TEX. ELEC. CODE § 122.032 ..... 16, 17
TEX. ELEC. CODE § 123.001 ..... 16, 20
TEX. ELEC. CODE § 123.002 ..... 16, 20
TEX. ELEC. CODE § 129.054 ..... 30
TEX. ELEC. CODE § 276.013 ..... 17
TEX. ELEC. CODE Chap. 273 ..... 25
TEX. ELEC. CODE Chap. 65 ..... 25
TEX. ELEC. CODE Chp. 65 ..... 11
TEX. GOV. Code § 2274 ..... 30
TEX. PEN. CODE § 1.07(33) ..... 22
TEX. PEN. CODE § 37.02 ..... 22
TEX. PEN. CODE § 39.06 ..... 22

## Other Authorities

2-12 Moore's Federal Practice- Civil § 12.38 ........ 12

Cohn, Jennifer. (2018) "Handout: The truth about our computerized election systems; Recommendations for advocating for hand marked paper ballots" https://jennycohn1.medium.com/handout-the-truth-about-our-computerized-election-systems-c4a17539de71 ........ 14, 20, 33

EAC Cerification Manual https://www.eac.gov/sites/default/files/eac_assets/1/6/Cert_Manual_7_8_15_FINAL.pdf ........ 15

ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 91 (3d ed. 2006) ........ 19

*James C. Harrington, Free Speech, Press, and Assembly Liberties Under the Texas Bill of Rights*, 68 TEX.L.REV. 1435, 1490 (1990) ........ 23

Texas Attorney General Opinion. Attorney General Opinion No. KP-0411 (texasattorneygeneral.gov) ........ 16

VSTL Manual https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf ........ 15

## Constitutional Provisions

Declaration of Independence ........ 18

Due Process Clause ........ 11, 28

Equal Protections Clause ........ 11, 29

of TEX. CONST. art. VI § 4 ........ 16

Right to Vote Clause ........ 33

TEX. CONST. art. I § 1 ........ 18, 19

TEX. CONST. art. I § 2 ........ 18, 19, 24

TEX CONST. art. I § 3 ........ 18, 25

TEX. CONST. art. 1 § 13 ........ 24, 25

TEX. CONST. art. I § 17 ........ 25

TEX. CONST. art. I § 19 ........ 24, 25

TEX. CONST. art. V § 1 ........ 32

TEX. CONST. art. VI § 2 ........ 16, 17, 18, 24, 25

TEX. CONST. art. VI § 2(c) ........ 17, 18

TEX. CONST. art. VI § 4 ........ 11, 17

TEX. CONST. art. 16 § 1 .......... 23, 32
U.S. Const. amend. 1 .......... 19, 27
U.S. Const. amend. 13 .......... 29
U.S. CONST. amend. 14 .......... 19
U.S. CONST. amend. 15 .......... 19, 25, 28
U.S. Const. amend. 19 .......... 25
U.S. Const. amend. 24 .......... 25
U.S. Const. amend. 26 .......... 25
U.S. CONST. art. I § 2 .......... 19
U.S. CONST. art. I § 3 .......... 19
U.S. CONST. art. I § 4 .......... 19, 34
U.S. CONST. art. IV § 4 .......... 19

## INTRODUCTION

Pro se Petitioner, Kimberly Wiseman, performed as a poll worker for the 2020 general election on election day, and an election judge for the 2021 constitutional election and 2022 primary election in Axtell, Texas. During the summer 2022, Petitioner was sworn in as a precinct chair. Petitioner brought this case as an action in law and equity under the Texas Constitution for violation of Petitioner's Equal Protection and Due Process rights by Respondents. Petitioner sought only equitable, injunctive, and declaratory relief against Respondents for violation of Petitioners clearly established Equal Protection and Due Process rights guaranteed to them by and through the Texas Constitution. Petitioner did not seek damages.

The Texas Legislature exercised its Constitutional authority in allowing the use of electronic voting machines in Texas. In this case, Petitioner seeks to ensure Respondents comply with the Legislative standard set forth in Title 8 of the Texas Election Code. In light of the fact that Respondents chose to utilize election voting systems and devices that do not adhere to the statutory requirements, Petitioner sought a Declaratory Order that the Respondents adhere to the constitutionally protected process of collecting and counting votes that ensures integrity and transparency. This is to require hand-marked paper ballots that can be cast with anonymity, following all Texas state election laws, and hand-counted by residents of the state of Texas, not machines as Texas Election law specifies. (TEX. CONST. art. VI § 4 and TEX. ELEC. CODE Chp. 65). Additionally, Petitioner sought redress for the abuse and devastation of our United State and Texas Constitutional rights and protections by our elected officials. McLennan County is utilizing uncertified, computerized equipment that is, by nature, vulnerable to manipulation by unauthorized persons. The true results of an election that relies upon computerized equipment can never be known with full confidence, and Petitioner's constitutional rights to vote will be denied if computerized equipment is used.

## STANDARD FOR REVIEW

Standards for granting Fed.R.Civ.P. 12(c) motions are the same as for a Fed. R. Civ. P. 12(b)(6) motion: A court must accept all allegations in the complaint as true and draw all inferences in non-moving party's favor, and dismiss the case only if satisfied that the complaint cannot state any set of facts that would entitle plaintiff to relief. 2-12 Moore's Federal Practice- Civil § 12.38. This Court must accept all of the alleged facts as true and resolve them in a light most favorable to the Plaintiff. *Hunnings v. Texaco, Inc.* 29 F.3d 1480, 1483 (11th Cir.1994). The motion to dismiss should be granted " if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994). The complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hawthorne v. Mac Adjustment*, 140 F.3d 1367, 1370 (11th Cir.1998). *Marco's Franchising, LLC v. Marco's Italian Exp., Inc.*, 239 F.R.D. 686, 687 (M.D. Fla. 2007).

The "simple question before the Court" on a motion to dismiss is "'whether Plaintiffs have alleged sufficient facts in the complaint to allow the Court to plausibly infer' that the Defendants' conduct have or will deny Plaintiffs their rights. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955." *Ashcroft v. Iqbal*, 556 U.S. 662, **678** (2009) (citing *Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)*). The petition easily surpasses this threshold.



of this case, we conclude the district court abused its discretion by failing to take judicial notice of the actual earnings history provided by Northrop Grumman on the internet as required by Rule 201(d). (*O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007))."

Judicial notice can be used when ruling on a motion to dismiss: "When reviewing a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (citations omitted). (*Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

***Judicial Notice***

Due to the dispositive nature of the facts presented in this case, judicial economy warrants the Court to take judicial notice of the public record contained in the petition and subsequent filings regarding electronic voting equipment and systems certifications published by the Texas Secretary of State, the Elections Assistance Commission, Department of Homeland Security, Center for Information Security, and communications from all Respondents' official email addresses. "It is not uncommon for courts to take judicial notice of factual information found on the world wide web. See *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n. 1 (6th Cir.2005) (taking judicial notice of a term defined on the website of the National Association of Securities Dealers, Inc.); *Schaffer v. Clinton*, 240 F.3d 878, 885 n. 8 (10th Cir.2001) (taking judicial notice of information found in a political reference almanac and citing to the almanac's website). *Cf. Grimes v. Navigant Consulting, Inc.*, 185 F.Supp.2d 906, 913 (N.D.Ill.2002) (taking judicial notice of published stock prices found on the world wide web). Under the circumstances of this case, we conclude the district court abused its discretion by failing to take judicial notice of the actual earnings history provided by Northrop Grumman on the internet as required by Rule 201(d). (*O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007))."

Judicial notice can be used when ruling on a motion to dismiss: "When reviewing a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (citations omitted). (*Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

## ARGUMENTS AND AUTHORITIES

This case is one of a series of case that are appearing across the nation, and even in the state of Texas challenging the electronic voting systems, requiring the evidence of the 2020 general election stay in preservation, and holding representative officials accountable. Similar cases have been filed in Florida, Oklahoma, Kansas, and Michigan – to name a few. See *Kari Lake, et al. v. Karie Hobbs, Arizona Secretary of State* (case 2:22-cv-00677-JJt), *Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1280 (N.D. Ga. 2020). Regardless of the brand, make, or model of the electronic voting systems and devices implemented and approved by Respondents for elections, none of them adhere to the Voting System Standards codified by the Texas Legislature. TEX. ELEC. CODE Title 8. For a wealth of resources discussing years of unfaithful standards, manipulation, and vulnerability.[1]

### A. FACT-BASED MERITS

One of the most basic requirements of a 42 U.S.C. § 1983 claim is that defendant personally cause — either by directing, or knowing of and acquiescing in — the deprivation of a Plaintiffs' constitutional rights. See *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Texas codified HAVA into its Election Code. Petitioner presents a substantial number of facts backed by credible and official sources that demonstrate the electronic voting systems utilized since the 2020 election do not perform according to the voting system standards (TEX. ELEC. CODE §122.01) necessary to conduct free and fair election, and were not properly certified (TEX. ADMIN. CODE §§ 81.60 and 81.61). (Petition for Declaratory Judgment and Emergency Relief Against Electronic Voting Systems and Destruction of Records, pg. 10-39, and Appendix 6-7). Specifically, Texas

---

[1] see Cohn, Jennifer. (2018) "Handout: The truth about our computerized election systems; Recommendations for advocating for hand marked paper ballots" https://jennycohn1.medium.com/handout-the-truth-about-our-computerized-election-systems-c4a17539de71

Election Code §122.01(a)(3) states "operates safely, efficiently, and accurately and complies with the voting system standards adopted by the Election Assistance Commission". Under HAVA 2002 (42 U.S.C. §15371(b)) "requires that the EAC provide for the accreditation and revocation of accreditation of independent, non-federal laboratories qualified to test voting systems to Federal standards".

"In order to meet its statutory requirements under HAVA §15371(b), the EAC has developed the EAC's Voting System Test Laboratory Accreditation Program." The procedural requirements for this program are outlined in the EAC's Voting System Test Laboratory Accreditation Program Manual[2] and the EAC's Voting System Test Laboratory Program Manual (OMB 3265-0018)[3]. The accreditation for Voting System Testing Laboratories (VSTLs) "shall not exceed a period of two (2) years...", according to EAC guidelines. The accreditation for VSTLs is signed by the Chairman of the EAC. As outlined in the complaint, the EAC did not have quorum or proper signatures from the EAC chairman to allow for certification of VSTLs from 2017 forward. Therefore, certification of machines from 2017 forward was not conducted properly per the guidelines set by HAVA and the EAC itself. (Petition Appendix 6).

Hart-eSlate Voting Systems do not pass "with flying colors" the examiners' tests as Respondents suggest (Joint Answer pg. 2). According to the SoS website document "Voting-System-By-County", McLennan County utilized Hart E-Slate 6.2.1 for elections since 2020 (See Appendix). The Petition contains extensive information regarding Hart E-Slate 6.2.1 and examiners' reports (pg. 25-32). On August 17, 2022, the Attorney General of Texas declared cast

---

[2] https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf

[3] https://www.eac.gov/sites/default/files/eac_assets/1/6/Cert_Manual_7_8_15_FINAL.pdf

vote records a matter of public record[4]; however, instead of responding to Public Information Requests (PIR), McLennan County chose to delay delivering public record to constituents by requesting the Attorney General to further elaborate. (See Appendix).

Respondents largely focus on the use of Direct Recording Devices (DRE) in their response and motion to dismiss. The U.S. Senate Select Committee on Intelligence reported findings and recommendations based upon its investigation into cybersecurity threats to U.S. election infrastructure. Mr. Alex J. Halderman cites this report as evidence of vulnerabilities in the existing election system used in the United States. Paperless DRE machines are notoriously vulnerable to cyber-attacks that can cause a multitude of issues. He also states the use of all DRE type machines should be discontinued. (See Petition pg. 34, Appendix P-2).

Regardless of what the SoS said or did, he is not the indispensable party that Respondents claim for this this suit. Respondents made a choice to approve, adopt, and purchase election voting equipment that do not adhere to the standards set forth in Title 8 of the Texas Election Code. (TEX. ELEC. CODE §§ 1.014, 123.001, and 123.002). Respondents, knowing the law, were knowingly remiss in their duties acting under the color of law and are in violation of Texas statute in not acknowledging the expiration of certifications of accreditation of VSTLs or the lack of legal signature per HAVA thereby allowing voting machines to be used in elections since 2020 violating Tex. Elec. code § 122.032, § 52.062, Tex. Admin. Code § 81.60 and § 81.61, which are apparent violations of TEX. CONST. art. VI §§ 2 and 4 and federal 52 U.S.C. 20971. Respondents acting under the color of law allowed for the use of uncertified, non-complaint voting system equipment, software, and modifications for elections occurring in McLennan County in 2021 and 2022

---

[4] Texas Attorney General Opinion. Attorney General Opinion No. KP-0411 (texasattorneygeneral.gov)

violating TEX. ELEC. CODE §§ 122.032, 52.062, TEX. ADMIN. CODE § 81.60 and § 81.61, which are violations of TEX. CONST. art. VI §§ 2 and 4, and federal 52 U.S.C. 20971.

## B. STANDING

Respondents seek to challenge Petitioner's standing in court as a voter. ""When standing has been conferred by statute, the statute itself serves as the proper framework for a standing analysis." *In re S.M.D.*, 329 S.W.3d at 12." *In re D.D.L.*, No. 13-22-00062-CV, at *5 (Tex. App. Aug. 25, 2022). The privilege of free suffrage shall be protected by laws regulating elections and prohibiting under adequate penalties all undue influence in elections from power, bribery, tumult, or other improper practice (TEX. CONST. art. VI § 2(c), TEX. ELEC. CODE § 276.013).

This constitutional context explains the function of the standing inquiry. "[T]he gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." Id. at 517, 127 S.Ct. 1438 (citation omitted). *Texas v. Penguin Grp. (Usa) Inc. (In re Elec. Books Antitrust Litig.)*, 14 F. Supp. 3d 525, 529-30 (S.D.N.Y. 2014). A litigant who has a procedural right for protected concrete interests "can assert that right without meeting all the normal standards for redressability and immediacy," ibid." *Massachusetts v. Environmental Protection Agency*, 549 U.S. 497, 498 (2007). *Clinton v. City of New York*, 524 U.S. 417, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998), which states: [It is a] self-evident proposition that more than one party may have standing to challenge a particular action or inaction. Once it is determined that a particular plaintiff is harmed by the defendant, and that the harm will likely be redressed by a favorable decision, that plaintiff has standing — regardless of whether there are others who would also have standing to sue. *Goode v. City of Philadelphia*, 539 F.3d 311, 322 (3d Cir. 2008).

Voting is an indisputable right "of the most fundamental significance under our constitutional structure." *Burdick v. Takushi, 504 U.S. 428, 433 (1992).* The Constitutions of Texas and the United States recognize that human beings have "certain inalienable rights" to which they are entitled which arise as a matter of natural right. The most crucial of these rights are the constitutionally protected Fundamental Rights, which are rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Connecticut*, 302 U.S. 319, 325, 326, 58 S. Ct. 149, 152, 82 L. Ed. 288 (1937); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc). Petitioner has a vested interest in protecting the quality, accuracy, and effectiveness of the individual votes cast by Petitioner to ensure the representative leaders in society are lawfully elected by the consent of the governed for the protection against tyranny and for healthy maintenance of our Republican form of government bestowed upon us by our ancestors and for the advantage of our descendants. It is time for the representative servants to remember who the genuine authority of government is in this state. Dec. of Ind., TEX. CONST. art. I §§ 1, 2, 3, and art. VI § 2(c).

***Generalized Grievance***

Respondents' legal argument attempts to strip Petitioner's individualized injury as each transaction – the vote – is personal and constitutionally protected from dilution or manipulation. The carelessness of negating one vote is one too many in a constitutional republic. If such impairment does produce a legally cognizable injury, [the plaintiffs] are among those who have sustained it. Because they assert a plain, direct and adequate interest in maintaining the effectiveness of their votes, not merely a claim of the right, possessed by every citizen, to require that the Government be administered according to law, the voters have standing to pursue their equal protection claim. *Baker v. Carr*, 369 U.S. 186, 206, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The negligence of our most treasured civic duty is outrageous and shocking. Petitioner establishes

concrete, particularized, individualized injury. Our founding documents – namely the Declaration of Independence, Article I §§ 2, 3, and 4 of the U.S. Constitution, the First, Fourteenth, and Fifteenth Amendments, and TEX. CONST. art. I §§ 1, 2, 3 – solidify the right to vote in order to ensure a Republican form of government. *U.S. CONST. art. IV § 4, TEX. CONST. art. I § 2.* The governmental representatives of a people bequeath consequences, whether positive or negative (the amount and degree of harm the population of a society experiences correlates to how tyrannical a representative authority becomes). Petitioner has endured her own individualized, tangible, specific injuries as a result of election maladministration and malfeasance over the series of elections since 2020 due to leadership failing to uphold and defend the Constitution.

The assertion of the Respondents that Petitioner lacks standing to bring claims is incorrect. Injury in fact "… is based not on the number of people affected — a grievance is not generalized merely because it is suffered by large numbers of people. ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 91 (3d ed. 2006). As the Supreme Court has noted, "[t]o deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 686-88, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). Thus, "where a harm is concrete, though widely shared, the Court has found injury in fact." *EEC v. Akins*, 524 U.S. 11, 24, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (citation omitted). *Andrade v. Naacp of Austin*, 345 S.W.3d 1, 7-8 (Tex. 2011). The actual and imminent injury will occur again during the 2022 Elections through the utilization of electronic voting equipment and systems that the Respondents acknowledge will be used.

***Speculative Pleading***

Petitioner's cause is not merely an infraction against constitutionally-protected rights that occurred in the past, but an ongoing violation against Petitioner's federally and constitutionally-protected voting rights under the First, Fourteenth, and Fifteenth amendments of the U.S. Constitution through the utilization of electronic voting systems that do not adhere to voting system standards (TEX. ELEC. CODE §§ 122.001, 123.001, 123.002). The evidence clearly laid out by Petitioner show that the Respondents failed to take necessary actions to protect Petitioner's right to vote and continue to do so to this day, causing ongoing individual harm to Petitioner. Respondents' failures prove individual injury and harm to Petitioner (pg. 37-39). Respondents, when made aware of the lack of proper certification, had jurisdiction within their official capacity (TEX. ELEC. CODE §§ 123.001, 123.002) to seek an injunction and or restraining order from the attorney general on the voting equipment/software to prevent the use of any part of the voting system/software. As such, the injury alleged is not only possible, but increasingly imminent as Respondents intend to continue using electronic voting systems and devices for the pending election.

***Sovereign/Governmental Immunity***

In filing their Notice of Removal and assertions for removal, the Respondents waive their right to any defenses or objections they may have to this action – including immunity and indemnification: *See College Sav. Bank*, 527 U.S. at 675-76, 119 S.Ct. at 2226. *Haddad v. Fromson*, 154 F. Supp. 2d 1085, 1091 (W.D. Mich. 2001). *Embury v. King*, 361 F.3d 562, 564-65 (9th Cir. 2004). *Pittman v. State*, CV 05-509-BR, at *6 (D. Or. Aug. 8, 2005). *Trs. of Purdue Univ. v. Vintage Brand*, LLC, 541 F. Supp. 3d 868 (N.D. Ind. 2021). "[T]he doctrine of sovereign immunity is not a constitutional right; it is a common law theory or defense established by this Court. Thus when there is a clash between these constitutional rights and sovereign immunity, the

constitutional right must prevail." *Corum v. Univ. Of N.C.*, 413 S.E.2d 276 (N.C. 1992). Governmental immunity is not applicable to constitutional violations. *Sale v. Highway Commission*, 242 NC 612 (1955).

***The Doctrine of Laches***

In the absence of some element of estoppel, the doctrine of laches does not bar an action before the statute of limitations has run. *Delta County Levee Improvement Dist. No. 2 v. Leonard*, 516 S.W.2d 911, 913 (Tex. 1974), cert. denied, 423 U.S. 829 (1975); *Rivera v. City of Laredo*, 948 S.W.2d 787, 793 (Tex. App.-San Antonio 1997, pet. denied). *Mantos v. City*, No. 02-09-00315-CV, at *1 (Tex. App. Feb. 10, 2011). The statute of limitations has not expired. The Laches affirmative defense contradicts Respondents' defense of sovereign immunity. "The State argues that the trial court erred in barring the State's recovery due to laches because laches is an affirmative defense that does not apply to a sovereign" *State v. Neill*, No. 03-12-00571-CV, at *3 (Tex. App. Apr. 10, 2014).

***The Doctrine of Unclean Hands***

The Doctrine of Unclean Hands applies when someone ""has committed some unconscionable act that is 'directly related to the subject matter in litigation.'" *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (quoting *Weiss v. Mayflower Doughnut Corp.*, 1 N.Y.2d 310, 316 (1956))." *Peters v. UBS AG*, 13 Civ. 3098 (PAC), at *8 (S.D.N.Y. Jan. 15, 2014). Petitioner was just a poll worker who mostly cleaned the machines due to "Covid" during the 2020 general election. Petitioner was asked to be an election judge months later, for a local election. Petitioner has only recently become a precinct chair, but still has not received login credentials from the GOP. Precinct chairs swear an oath to protect and defend both the US Constitution and the Texas Constitution, which is what Petitioner is attempting to do with this suit. Petitioner works for the people of her precinct – not the GOP.

***General Denial***

Respondents purport to be elected officials, who have taken an oath of office to act as Petitioner's representative. "A general denial places in issue all matters pleaded by the adverse party which are not required to be denied under oath. Tex. R. Civ. P. 92." *Theobold v. Pate*, 542 S.W.2d 460, 464 (Tex. Civ. App. 1976). Through the utilization of official sources, Petitioner exceeded the requirement to provide evidentiary support for the petition's allegations. A legal sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999). *Gant v. Grand Prairie Ford*, No. 02-06-386-CV, at *1 (Tex. App. July 19, 2007).

Furthermore, Petitioner argues that Respondents are not relinquished of their oath of office at any time to assert a general denial as becoming an official representative in office is clearly any type of administrative, executive, legislative, or judicial proceeding conducted before a public servant. TEX. PEN. CODE § 1.07(33), and attempting to assert such denial constitutes a violation of TEX. PEN. CODE §§ 37.02 and 39.06. Respondents took an oath swearing to faithfully execute the duties of their office in the State of Texas, and will to the best of their ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help them God; furthermore, affirming they have not directly or indirectly paid, offered, promised to pay, contributed, or promised to contribute any money or thing of value, or promised any public office or employment for the **giving or withholding of a vote** at the election at which they were elected

or as a reward to secure their appointment or confirmation, whichever the case may be, so help them God. TEX. CONST. art. 16 § 1.

## E. REMEDIABLE RIGHTS

The Constitution itself provides both the cause of action and the remedy. *Jacobs*, 290 U.S. at 16, 54 S.Ct. at 27 (1933); *San Diego Gas Electric Co. v. City of San Diego*, 450 U.S. 621, 654-55, 101 S.Ct. 1287, 1305-06, 67 L.Ed.2d 551 (1981) (Brennan, J., dissenting); see also *Dickinson,* 331 U.S. at 748, 67 S.Ct. at 1384 (1947). "The Texas Constitution itself provides for an independent grounding to assert a constitutional cause of action wherein a governmental entity or the officials thereof interfere with an individual citizen's rights which are protected by the State constitution...See, *Philip J. Pfeiffer W. Wendell Hall, Employment and Labor Law*, 43 SW.L.J. 81, 84 (1989); *James C. Harrington, Free Speech, Press, and Assembly Liberties Under the Texas Bill of Rights*, 68 TEX.L.REV. 1435, 1490 (1990)." *Low v. King*, 867 S.W.2d 141, 144-45 (Tex. App. 1993). "The right to vote is a "natural right" in our society. *Thomas v. Groebl*, 147 Tex. 70, 212 S.W.2d 625, 630 (1948). This right and the integrity of the voting process must be zealously protected." *Thompson v. Willis*, 881 S.W.2d 221, 225 (Tex. App. 1994). "The right to vote is the "preservative of all rights." *Shelby County v. Holder*, 570 U.S. 529, 566 (2013) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886))." *In re State*, No. 20-0394, at *10 n.33 (Tex. May 27, 2020). It is an undeniable feature of our political system and tradition that an "individual's right to vote . . . is protected as a fundamental right." *Veasey v. Perry*, No. 13-CV-00193, 2014 WL 5090258, at *41 (S.D.Tex. Oct. 9, 2014), stayed by 769 F.3d 890 (5th Cir. (Tex.) Oct. 14, 2014) (citing *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992); *Kusper v. Pontikes*, 414 U.S. 51, 55 (1973)). *Cuellar v. Maldonado*, No. 13-14-00491-CV, at *7 (Tex. App. Mar. 5, 2015).

***Federal Question***

Respondents assert this is a federal question case as the complaint relies on federal law. (Notice of Removal, pg. 2). Petitioner is entitled to free and fair elections of our representatives as affirmed in the United States Constitution under the First, Fourteenth, and Fifteenth Amendments and reaffirmed in the Texas State Constitution under Art. 1 § 2, § 13 and § 19, Art. VI § 2. As the Texas State Constitution and laws mirror the Constitution and laws of the United States, the State of Texas provides the means by which we exercise the right to vote. Petitioner emphasized her vote as her property (pg. 40). The Courts recognize the necessity of prohibiting a State (or subdivision thereof) from exploiting a power to justify the imposition of an "unconstitutional condition." "Acts generally lawful may become unlawful when done to accomplish an unlawful end, *United States v. Reading Co.*, 226 U.S. 324, 357, and a constitutional power cannot be used by way of condition to attain an unconstitutional result." *Western Union Telegraph Co. v. Foster*, 247 U.S. 105, 114. *Gomillion v. Lightfoot*, 364 U.S. 339, 347-48 (1960).

***Voting Rights***

Voting is a constitutionally and federally protected right as 18 U.S.C. § 245 affirms. Texas Codified HAVA and 18 U.S.C. § 245 confers a federally protected right. Section 1983 of Title 42 creates a cause of action against anyone who, acting under color of law, deprives an individual of rights secured by the Constitution or by federal statute. See 42 U.S.C. § 1983. The statute is not a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Thus, "that, in those few cases in which organic failures in a state or local election process threaten to work patent and fundamental unfairness, a colorable claim lies for a violation of substantive due process (and, hence, federal jurisdiction attaches)." *Bonas v. Town of North Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001).

***Constitutional Claims***

Petitioner's petition for Declaratory Judgment and Emergency Relief was based upon the United States and Texas Constitution. The state court has concurrent jurisdiction with federal court regarding constitutional questions. Petitioner used both state and federal statutes and constitutional provisions as much of the State of Texas statutes and constitutional law parallels the federal; in addition to the Respondents' claims, Petitioner also brought the cause of action under TEX. CIV. PRAC. & REM. CODE §§ 37.003, 37.004 (a)(b), 65.011, TEX. CONST. art. VI § 2, TEX. CONST. art. I §§ 3, 13, 17 and 19, as well as a multitude of Texas Election Code including Chapters 65 and 273. Count I was brought under TEX. CONST. art. I §§ 17 and 19, and the First, Fourteenth, and Fifteenth Amendments; Count II under TEX. CONST. art. I § 3, and the Fourteenth Amendment; Count III and IV under TEX. CONST. art. I §§ 13 and 19, Count V under TEX. CONST. art. VI § 2, and the First and Fourteenth Amendments; and Count VI under TEX. CIV. PRAC. & REM. CODE § 37.003, § 37.004 (a)(b).

**1. *Petitioner Alleges Facts for First Amendment Violation***

The Voting Rights Act addresses specific issues concerning the right to vote, and the U.S. Constitution guarantees the protection of the right to vote of certain classes of individual with the Fourteenth, Fifteenth, Nineteenth, Twenty-fourth, and Twenty-sixth Amendments of the U.S. Constitution which protecting voting rights. Petitioner maintains the election of our represented officials are further protected under the First Amendment as free expression to ensure our voices count for the consent of the governed. The election may be set aside irrespective of party conduct "if the acts [of non-party persons] disrupted the voting procedure or destroyed the atmosphere necessary to the exercise of a free choice in the representation election." *NLRB v. Carroll Contracting Ready-Mix, Inc.*,636 F.2d 111, 113 (5th Cir. 1981); *NLRB v. Claxton Manufacturing Co.*,613 F.2d 1364, 1371 (5th Cir. 1980). *N.L.R.B. v. Slagle Mfg. Co.*, 658 F.2d 785, 786 (10th Cir.

1981). As a threshold matter, the court is required to review with particular care any claim that the governmental body is actually attempting to suppress controversial, political, or other forms of expression...Any willful or purposeful effort by a municipality to suppress protected expression clearly conflicts with the first amendment. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 575 (9th Cir. 1984).

The general rule for lacking the constitutional right to sue state actors "is modified by two exceptions: (1) the `special relationship' exception; and (2) the `danger creation exception.'" *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir.1992). See *Deshaney v. Winnebago Cty. Soc. Servs. Dept*, 489 U.S. 189 (1989). First, Petitioner has established that she is dependent upon the Respondents adopting/approving systems and procedures for voting that do not infringe upon, restrain, alter, dilute, or cause illegality to Petitioner's elections choices in compliance with Texas Election Code, Title 8. The hallmark of a special relationship is that the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; *Conway v. Pacific University*,324 Or. 231, 240 (1996). *Doe v. Gladstone Sch. Dist.*, Civil No.: 3:10-cv-01172-JE, at *22 (D. Or. June 6, 2012). Petitioner contends that Respondents, knowing the law, adopted and approved election voting systems and devices that do not adhere to the legislative prescribed standards, thereby inflicting harm upon Plaintiffs. Respondents affirmatively placed Petitioner in a position of danger, knew the risk with twenty years of public record and congressional hearings attesting to such a hazard, and consequently, affirmatively placing Petitioner in danger of having their votes (expressions, wills, voices, consent) infringed upon, restrained, altered, diluted, or illegalized.

To prevail under the danger-creation exception, a petitioner must first show that "the state action `affirmatively place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir.2006) (quoting *DeShaney*, 489 U.S. at 197, 109 S.Ct. 998). *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007). Respondents (1) created the danger or increased Petitioner's vulnerability to the danger by approving and adopting uncertified, non-compliant voting systems and devices; (2) Petitioner is a voter and precinct chair (Fourteenth and Fifteenth Amendments, 18 U.S.C. 245); (3) Respondents' conduct put Petitioner at substantial risk of immediate, and proximate harm; (4) the risk was obvious or known; (5) Respondents acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking. See *Currier v. Doran*, 242 F.3d 905 (10th Cir. N.M. 2001) – on the Danger Creation Doctrine. When a state officer's conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional claim. *Johnson v. City of Seattle*, 474 F.3d 634, 640 (9th Cir. 2007). citing *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997).

**2. *Petitioner Alleges Facts for Fourteenth Amendment Violation***

The Free Speech Clause of the First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." See U.S. Const. amend. 1. The Free Speech Clause applies to the states by way of the Fourteenth Amendment. See *Snyder v. Phelps* , 580 F.3d 206, 214 n.4 (4th Cir. 2009) (citing *Stromberg v. California* , 283 U.S. 359, 368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) ). That short but forceful phrase has given rise to a complex array of legal protections for free expression, which the courts have flexibly applied in a variety of circumstances. Those precedents establish that the First Amendment protects speech along a spectrum, so that "[l]aws

that impinge upon speech receive different levels of judicial scrutiny depending on the type of regulation and the justifications and purposes underlying it." See *Stuart v. Camnitz*, 774 F.3d 238, 244 (4th Cir. 2014). *Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019). Thus, "that, in those few cases in which organic failures in a state or local election process threaten to work patent and fundamental unfairness, a colorable claim lies for a violation of substantive due process (and, hence, federal jurisdiction attaches)." *Bonas v. Town of North Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001).

For the consideration of federal jurisdiction, "there is guidance enough in the nation that due process is implicated where the entire election process — including as part thereof the state's administrative and judicial corrective process — fails on its face to afford fundamental fairness... In cases falling within such confines, we think a federal judge need not be timid, but may and should do what common sense and justice require." *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978). Due process, "[r]epresenting a profound attitude of fairness between man and man, and more particularly between individual and government," *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 163, 72 S.Ct. 624, 643, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring), is implicated in such a situation.

**3. *Petitioner Alleges Facts for Fifteenth Amendment Violation***

The Fifteenth Amendment "reaffirms the equality of races at the most basic level of the democratic process, the exercise of the voting franchise. It protects all persons, not just members of a particular race: The design of the Amendment is to reaffirm the equality of races at the most basic level of the democratic process, the exercise of the voting franchise... Previous to this amendment, there was no constitutional guaranty against this discrimination: now there is." *United States* v. *Reese*, 92 U.S. 214, 218 (1876). *Rice v. Cayetano*, 528 U.S. 495, 512 (2000). (Equal

Protections Clause). The Court did not specify the Fifteenth Amendment applies only to a protected class, but rather it applies to everyone.

The discrimination occurs as Texans are separated into the "ruling class" and the "commoners" through unlawful voting methods and procedures. The Respondents continued to certify election results knowing they violated civil liberties subsequently forcing Petitioner into fraudulent contracts with illegally elected government officials: providing said officials with unlawful power to enforce actions under the color of law coercing and subjecting Petitioner into servitude in which our liberty to determine our own course and way of life has been strong-armed from us (U.S. Const. amend. 13).

### *4. Declaratory Relief*

"The Court cited with approval the Ninth Circuit's decision in *Life Ins. Co. of North Am. v. Reichardt*, 591 F.2d 499, 505 (9th Cir. 1979), which held that "[v]iolations of state conferred rights and privileges are sufficient to constitute a deprivation of `equal protection of the laws.'"" *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 589 (2d Cir. 1988). The express language of the Declaratory Judgment Act makes clear that declaratory relief may be granted "whether or not further relief is or could be sought," 28 U.S.C. § 2201 - in other words, whether or not there is a private right of action. What is required is an actual case or controversy, not a private right of action. *Menominee Indian Tribe of Wis. v. Drug Enforcement Admin.*, 190 F. Supp. 3d 843 (E.D. Wis. 2016) (citing *Schilling v. Rogers*, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) that held that an action for declaratory relief, like any action, requires "a judicially remediable right," Id. at 677, 80 S.Ct. 1288, not a private right of action). The requirements for Declaratory Judgment are satisfied here. "It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Lackey v.*

*State*, 638 S.W.2d 439, 467 (Tex. Crim. App. 1982). "The judiciary has a historic duty to uphold constitutional protections of individual liberties." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 472 (Tex. 2012).

### *5. Injunctive Relief*

Petitioner thoroughly explained the reasoning for Injunctive Relief (Petition pg. 39-46).

i. Timing

In defining Legislative construction, the Courts ""presume that the Legislature intended all provisions of a statute to be effective, and that it intended a just and reasonable result." *City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010)... the failure to employ mandamus when this type of substantial right is placed in jeopardy 'would vitiate and render illusory the right to a rapid, inexpensive alternative to traditional litigation' (quoting *Gulf Energy Pipeline Co.* , 884 S.W.2d at 824 )...In determining whether there is an adequate remedy, courts "must consider whether mandamus will preserve important substantive and procedural rights from impairment or loss." *In re Team Rocket*, L.P., 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding)." *In re State*, 325 S.W.3d 848, 852 (Tex. App. 2010).

Respondents conducted the 2020 general elections were conducted in violation of the stated election code at the time: a voting system may not be capable of being connected to any external or internal communications network, including the Internet. (TEX. ELEC. CODE § 129.054, H.B. 2524 Direct Recording Electronic Voting Systems). Effective June 18, 2021, Texas Government Code § 2274 prohibits contract with certain foreign-owned companies related to critical infrastructure, which implicates to the elections of 2021 and 2022 primaries. "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 477 (1983). If we

brought this case after the election, then no doubt Respondents would be arguing that the lawsuit was moot because there was no upcoming election.

ii. <u>Status Quo</u>

This injury brought forward in the petition is unprecedented. Should the fact that there is no precedent for this type of injury stand as a means to dismiss the case? The Petitioner's facts have merit and should be heard due to their unprecedented nature to ensure the Constitutional questions surrounding this type of deprivation of rights be answered. In order for a precedent to exist, there must be an antecedent case. The absence of precedents, then, is no authority against a right of action, and that circumstance does not in and of itself defeat a right of action. *Heine v. New York Life Insurance Co.*, 50 F.2d 382, C.A.9, 1931. "It is well established that the mere absence of precedent does not prove that an action cannot be maintained." *Daily v. Parker*, 152 F.2d 174, 162 A.L.R. 819, C.A.7, 1945; *Morrow v. Yannantuono*, 152 Misc. 134, 273 N.Y.S. 912; *Hill v. Sibley Memorial Hospital*, 108 F. Supp. 739, 740 (D.C.D.C., 1952). To the same effect is *Bonbrest v. Kotz*, 65 F. Supp. 138 (D.C.D.C., 1946). Neither does the absence of precedents raise any presumption, ipso facto, that a plaintiff lacks a remedy. *United States v. Pennzoil Company*, 252 F. Supp. 962, 970-71 (W.D. Pa. 1965).

But, counsel argue, rigid rules of law intervene to prevent the righting of this wrong. If true, it is a grave reproach to our jurisprudence. But it is not true; rules of law are not as inflexible as counsel assert; if the decided cases afford no precedent for the redress of the wrong here perpetrated, then a precedent should now be established. The genius of the common law is its flexibility, a virtue arising from the determination of courts of long ago that justice should be done. *Kershaw v. Julien*, 72 F.2d 528, 530 (10th Cir. 1934).

iii. Right to Relief Sought

The judicial power of this State is vested in the courts created by the Texas Constitution. Tex. Const. Art. 5, § 1. Although we will not explore the boundaries of "judicial power" in this opinion, judicial power certainly includes the power to enforce the constitutions and laws of the United States and the State of Texas. To enforce and protect constitutional rights, courts must have authority to fashion appropriate remedies for violations of constitutional rights. The only questions in such cases are whether there was a constitutional violation and what is the appropriate remedy. Elected judges must swear or affirm that they will preserve, protect, and defend the United States Constitution and the Texas Constitution. Tex. Const. Art. 16, § 1. It would make no sense to provide for a constitutional right; require judges to preserve, protect, and defend that constitutional right; but prohibit judges from enforcing that constitutional right and from remedying a violation of that constitutional right. See also *Weeks v. United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652, 656 (1914) (if a remedy for the violation of a constitutional right is not provided, that right might as well be stricken from the Constitution). See *Dobbs v. Jackson Women's Health Organization*, No. 19-1392 (June 24, 2022) Justice Alito's opinion on the Doctrine of Stare Decisis. Constitutional rights are not simply grandiose, advisory principles. They are the foundation upon which our system of the orderly administration of justice is structured. (citing *State v. Johnson*, 821 S.W.2d 609 (Tex. Crim. App. 1991)), *State v. Terrazas*, 962 S.W.2d 38, 40 n.2 (Tex. Crim. App. 1998).

iv. Irreparable and Imminent Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Hernandez*, 872 F.3d (9th Cir. 2017). Petitioner alleges Respondents' failure to perform their sworn duty has allowed discrimination to occur across the

equality of races in the State of Texas. This violates the Right to Vote Clause of the Fifteenth Amendment. Petitioner suffers irreparable harm living under a government that no longer represents we the people and deprives us of the Republic that the Constitution of the State of Texas and United States Constitution outline as protection from a tyrannical government. Petition pg. 46-48. The injury alleged is not only possible, but increasingly imminent as Respondents intend to continue using electronic voting systems and devices for the pending election.

v. Balance of Hardships and Public Interest

"The balance of hardships and public interest favor injunctive relief. There is no hardship to Defendant, other than preventing him from engaging in unlawful activity. Therefore, the balance clearly weights in the plaintiffs' favor." *Dish Network v. Bauder*, Case No: 6:14-cv-1443-Orl-31DAB, at *15 (M.D. Fla. Mar. 12, 2015). Defendants have not offered any persuasive reason as to why they should be allowed to continue misappropriating Plaintiffs' likenesses. Accordingly, the Court finds that the balance of equities and public interest also favor injunctive relief. The Court therefore GRANTS Plaintiffs' Motion for a Preliminary Injunction. *Youngevity Int'l, Corp. v. Smith*, 224 F. Supp. 3d 1022, 1028 (S.D. Cal. 2016). The general public benefits from the remedy against the constitutional infringements where any citizen can bring a case before the court as long as it impacts the public interest, and benefits the general public, not just the Plaintiff. *Assoc. Indus. of New York v. Ickes*, 134 F.2d 694, 704 (2d Cir. 1943). Similarly, "[w]hen a constitutional violation is likely ... the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights." Id. (internal quotation marks omitted); see also *Obama for Am. v. Husted*,697 F.3d 423, 436 (6th Cir.2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed."); Deja Vu of *Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*,274 F.3d 377, 400 (6th Cir.2001). *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015)

## REMOVAL

Removal of this case was improper, U.S. CONST. art. I § 4. The Constitution explicitly commits to the States the authority to determine the manner of conducting elections. U.S. Const. art. I § 4. Thus, this case belongs in State court as it presents a question of law that is important to the jurisprudence of the state. "The Court is ultimately persuaded that jurisdiction is lacking in these circumstances by the Tenth Circuit's careful jurisprudence on the limited jurisdiction of the federal courts. As stated recently in *Pritchett v. Office Depot, Inc.*, 404 F.3d 1232, 1235 (10th Cir. 2005):

> It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals. Shamrock Oil Gas Corp. v. Sheets, 313 U.S. 100, 108-109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001). Thus, if there is ambiguity as to whether the instant statute confers federal jurisdiction over this case, we are compelled to adopt a reasonable, narrow construction.

Because federal courts are courts of limited jurisdiction, there is a presumption against removal jurisdiction. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.), cert. denied, 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995). Moreover, if the parties fail to raise the question of the existence of jurisdiction, the federal court has the duty to raise and resolve the matter. Id.; see also F. R. Civ. P. 12(h)(3). Federal removal jurisdiction is statutory in nature and is to be strictly construed. All doubts are to be resolved against removal. *Fajen v. Foundation Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982).

"Applying these principles…this Court finds that this case was improperly removed due to a lack of subject matter jurisdiction." *Consumer Crusade v. Fairon Associates*, 379 F. Supp. 2d 1132, 1137-38 (D. Colo. 2005). Respondent argues, "Because the Constitution explicitly commits to the States the authority to determine the time, place, and manner of elections, U.S. CONST. art.

I § 4, this case presents a nonjusticiable political question and the Court must dismiss it." (ECF no. 2 pg. 7). Petitioner argues this is the reason removal was inappropriate, an attempt to prevent the case from being heard and a diversion, and the reason to remand the case back to State court.

## PRAYER

Respectfully, the Petitioner prays the court will grant the Motion for Remand back to State Court. However, if your Honor chooses to assume jurisdiction, Petitioner prays this Court denies Respondents' Motion to Dismiss and allows the Petitioner to amend the original petition to cure federal court defects. This Court GRANTS such other and further relief as may be just, equitable, and proper including without limitation, an award of any attorneys' fees and costs to Petitioner.

Respectfully submitted this 26th day of September, 2022,

By: /s/ *Kimberly Wiseman*
Kimberly Wiseman
419 Barron Ln
Axtell, TX 76624
kimwiseman522@gmail.com
*Pro se*

# APPENDIX

| | | | | | |
|---|---|---|---|---|---|
| | ES&S | BALLOT MARKER | AUTOMARK | | 15 |
| MCCULLOCH | HART | SOFTWARE | HVS | 6.2.1 | 1 |
| | HART | DRE | ESLATE | | 6 |
| | HART | DRE | JBC | | 11 |
| | HART | SCANNER | ESCAN | | 8 |
| MCLENNAN | HART | SOFTWARE | HVS | 6.2.1 | 1 |
| | HART | DRE | ESLATE | | 663 |
| | HART | DRE | JBC | | 141 |
| MCMULLEN | ES&S | SOFTWARE | EVS | 6.0.2.0 | 1 |
| | ES&S | SCANNER | M100 | | 5 |
| | ES&S | BALLOT MARKER | AUTOMARK | | 6 |
| MEDINA | HART | SOFTWARE | VERITY | 2.0 | 1 |
| | HART | DRE | VERITY TOUCH | | 90 |
| | HART | DRE | VERITY CONTROLLER | | 17 |
| | HART | SCANNER | VERITY CENTRAL | | 1 |
| | HART | SCANNER | VERITY SCAN | | 1 |
| MENARD | HART | SOFTWARE | HVS | 6.2.1 | 1 |
| | HART | DRE | ESLATE | | 8 |
| | HART | DRE | JBC | | 6 |
| | HART | SCANNER | ESCAN | | 1 |
| MIDLAND | ES&S | SOFTWARE | EVS | 6.0.0.0 | 1 |
| | ES&S | BALLOT MARKER | EXPRESSVOTE | | 250 |
| | ES&S | SCANNER | DS200 | | 30 |
| | ES&S | SCANNER | DS450 | | 1 |
| MILAM | HART | SOFTWARE | VERITY | 2.0 | 1 |
| | HART | DRE | VERITY TOUCH | | 14 |
| | HART | DRE | VERITY CONTROLLER | | 14 |

| | | | | | |
|---|---|---|---|---|---|
| | HART | DRE | VERITY CONTROLLER | | |
| | HART | SCANNER | VERITY SCAN | | |
| MASON | ES&S | SOFTWARE | UNITY | 3.0.1.1 | 1 |
| | ES&S | SCANNER | M650 | | 1 |
| | ES&S | BALLOT MARKER | AUTOMARK | | 5 |
| MATAGORDA | HART | SOFTWARE | HVS | 6.2.1 | 1 |
| | HART | DRE | ESLATE | | 89 |
| | HART | DRE | JBC | | 22 |
| | HART | SCANNER | ESCAN | | 2 |
| MAVERICK | ES&S | SOFTWARE | EVS | 5.2.2.0 | 1 |
| | ES&S | SCANNER | M650 | | 1 |
| | ES&S | BALLOT MARKER | AUTOMARK | | 15 |
| MCCULLOCH | HART | SOFTWARE | VERITY | 2.4 | 1 |
| | HART | BALLOT MARKER | VERITY TOUCH ACCESS | | 11 |
| | HART | SCANNER | VERITY SCAN | | 12 |
| MCLENNAN | HART | SOFTWARE | HVS | 6.2.1 | 1 |
| | HART | DRE | ESLATE | | 663 |
| | HART | DRE | JBC | | 141 |
| MCMULLEN | ES&S | SOFTWARE | EVS | 6.0.4.0 | 1 |
| | ES&S | SCANNER | DS200 | | 5 |
| | ES&S | BALLOT MARKER | EXPRESSVOTE | | 5 |
| MEDINA | HART | SOFTWARE | VERITY | 2.4 | 1 |
| | HART | DRE | VERITY TOUCH | | 73 |
| | HART | DRE | VERITY CONTROLLER | | 17 |
| | HART | SCANNER | VERITY CENTRAL | | 2 |
| | HART | SCANNER | VERITY SCAN | | 17 |

**Scott M. Felton**
**McLENNAN COUNTY JUDGE**

P.O. BOX 1728 * Waco, Texas 76703-1728 * Phone No. 254-757-5049 * Fax No. 254-757-5196

August 30, 2022

The Honorable Ken Paxton
TEXAS ATTORNEY GENERAL
Office of the Attorney General
Attn: Open Records Division
P. O. Box 12548
Austin, Texas 78711-2548

**COPY**

Re: Opinion on Public Information Request (Ch. 552, *Government Code*)

Dear Mr. Paxton:

On August 21, 2022 the McLennan County Elections Department received a request seeking the Cast Vote Record ("CVR") for the 2020 General Election. The County Judge's Office is the public information office and is seeking this ruling on behalf of the McLennan County Elections Department. A copy of the request is attached hereto as Exhibit A.

The County believes that the CVR should be withheld until the 22 month period provided by §66.058 of the Texas Election Code has expired. Therefore, this ruling is sought pursuant to §552.101 of the Texas Government Code in conjunction with §66.058 of the Texas Election Code.

Texas Election Code section 66.058 states in relevant part as follows:

(a) Except as otherwise provided by this code, the precinct election records shall be preserved by the authority to whom they are distributed for at least 22 months after election day.

(b) For a period of at least 60 days after the date of the election, the voted ballots shall be preserved securely in a locked room in the locked ballot box in which they are delivered to the general custodian of election records. On the 61st day after election day, the general custodian of election records may:

(1) require a person who has possession of a key that operates the lock on a ballot box containing voted ballots to return the key to the custodian; and

(2) unlock the ballot box and transfer the voted ballots to another secure container for the remainder of the preservation period.

(b-1) Except as permitted by this code, a ballot box or other secure container containing voted ballots may not be opened during the preservation period.

[. . .]

(h) For the preservation of precinct election records in an election involving a federal office, the secretary of state shall instruct the affected authorities on the actions necessary to comply with federal law and otherwise implement this section.

An unauthorized entry into the secure container during the 22-month preservation period is punishable as a Class A misdemeanor. *See* Tex. Elec. Code § 66.058(d) & (e). Although Election Code section 66.058(b-1) permits access "as permitted by this code" to a secure container containing precinct election records during the preservation period, these exceptions include recounts, election contests, criminal investigations, and counts conducted pursuant to chapter 127 of the Election Code. *See* Tex. Elec. Code §§ 213.007 (access to ballots for recounts), 221.008 (examination of secured ballot boxes in election contest), 273.041 (grand jury may request examination of voted ballots), 127.068 (sealed ballot box may be opened as part of election tabulation). None of these exceptions are applicable to the present situation.

It is the County's understanding that the only method by which an authorized entry into the secure container can occur during the 22-month preservation period is through an order issued by a McLennan County District Court. *See* Tex. Elec. Code § 66.058(d) & (e); *see also* Tex. Const. art. 5 § 8 (granting district courts general jurisdiction of all matters except where specifically granted to another court or body).

The document in question, "The Cast Vote Records" ("CVR") is a digital representation of the ballot itself. In other words, the CVR is a duplicate of a voted ballot in electronic form. In Election Law Opinion No. JWF-9 (1983), the Texas Secretary of State concluded that magnetic tapes containing a mirror image of voted ballots "constitute duplicate ballots and must be treated as ballots in all respects, including the manner of their disposal." *Id.* at 2. In addition, the OAG concluded in Open Records Decision No. 505, at 5 (1988) that "Voted ballots from a primary election become public information available for public inspection after the 22-month retention period. A request under the Open Records Act for access to voted ballots must be honored before the ballots may be destroyed." Because the CVR is a duplicate of a ballot, the County asserts that it may not be publicly released during the 22 months following an election per Election Code section 66.058 and Government Code section 552.101.

Because the only copies of the requested documents are held by Elections in secure containers which cannot be opened during the 22-month preservation period, Elections and the County are unable to provide a representative sample of the requested documents to the OAG. Attached is the public test CVR, which is the closet equivalent to a blank CVR. A public test is run before every election to ensure the accuracy of the voting equipment. The CVR ID is the ballot serial number, and the devise serial is the serial number of the scan at the polling location that counted the ballot. The County acknowledges the OAG released Opinion No. KP-0411 on August 17, 2022, that members of the public may inspect or obtain copies of anonymous voted ballots. However previous open record rulings, such as OR2022-17424, etc. have held this information subject to the 22-month restriction.

Under these circumstances, the County on behalf of Elections asserts the requested documents are confidential and excepted from public release pursuant to Government Code section 552.101 in conjunction with Elections Code sections 66.058.

**Conclusion**

A public test sample CVR is attached as a representative sample of the requested documents as well as the sample ballots for the March 1, 2022, election. *See* Exhibit B, a public test sample of the CVRs and sample ballots. This letter will serve as notice to the requestor that the County is seeking a ruling regarding the request.

Sincerely,

/s/ Dustin Chapman
Dustin Chapman
County Administrator

Attachments:

Exhibit A – Public Information Act request
Exhibit B – Representative sample of documents containing information sought to be withheld

Cc: texasvoter@use.startmail.com

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **Kimberly Wiseman,**<br><br>Petitioner,<br>**v.**<br>**County Commissioners Jim Smith, Will Jones, Patricia Miller, Ben Perry, Jared Goldsmith, Elections Administrator, County Judge Scott Felton, et al.,**<br><br>Respondent. | No. 4:22-cv-00746-O |

## Proposed Order re: Motion to Dismiss

This matter came before the Court's consideration through Petitioners' Response to Respondents' Motion to Dismiss and after consideration of the merits, facts, and arguments the Court **ORDERS** the Motion to Dismiss should be **DENIED**.

Further, this Court **GRANTS** such other and further relief as may be just, equitable, and proper including without limitation, an award of any attorneys' fees and costs to Petitioners.

______________________________

Derek T. Gilliland
UNITED STATES MAGISTRATE JUDGE

RECEIVED
October 03, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: lad
DEPUTY

September 28,2022

U.S District Court Clerk

Waco

Please find the following documents in regards to Cause No. 6:22-CV-945, 6:22-CV-00945-ADA-DTG

Petitioner's Response to Respondents' Notice of Removal and Motion to Remand/ Proposed Order

Petitioner's Response to Respondents' Motion to Dismiss, Joint Answer, and Response to Request for Injunctive Relief/ Proposed Order

This is to certify that a true and correct copy of the foregoing instrument has been served pursuant to Rule 5 of the Federal Rules of Civil Procedure, September 28, 2022.

Kimberly Wiseman

kimwiseman522@gmail.com

419 Barron Ln.

Axtell, TX 76624

CKER AT TOP OF ENVELOPE TO THE RIGHT
ETURN ADDRESS, FOLD AT DOTTED LINE

RTIFIED MAIL®

.30 0000 5577 3251

FIRST-CLASS

PITNEY BOWES
US POSTAGE
02 7H
0001343262
$ 010.37⁰
SEP 29 2022
MAILED FROM ZIP CODE 76624

Clerk's Office
Ave. Rm 380
[illegible] 76701

RECEIVED

OCT 03 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______________
DEPUTY CLERK

Wiseman
419 Barron Ln
Axtell, TX 76624

PLACE ST
OF THE
CE

7018 1

U.S. District
800 Franklin
Waco, Tx 7